**MARK TWAIN KANSAS CITY BANK, Appellant,**

v.

**JACKSON, BROUILLETTE, POHL & KIRLEY, P.C., and John R. Weisenfels, Respondents,**

**Chicago Title Insurance Co., Defendant.**

**No. WD 49899.**

Missouri Court of Appeals, Western District.

Oct. 3, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 1995.

Application to Transfer Denied Jan. 23, 1996.

Phyllis G. Leach, James F. Duncan, Watson & Marshall, L.C., Kansas City, for appellant.

William I. Rutherford, David R. Buchanan, T. Michael Ward, Brown & James, P.C., St. Louis, for respondents.

Before ULRICH, P.J., and LOWENSTEIN and BRECKENRIDGE, JJ.

ULRICH, Presiding Judge.

Mark Twain Kansas City Bank (Mark Twain Bank) appeals the summary judgment entered in favor of the law firm of Jackson, Brouillette, Pohl & Kirley, P.C., and attorney John R. Weisenfels (Jackson Law Firm) in a negligent misrepresentation action.

The summary judgment is affirmed.

### Background

The Jackson Law Firm represented 10770 El Monte Associates, a Kansas general partnership, in a transaction to buy certain real property. The seller of the property was the Kroh Foundation, a charitable trust, whose sole trustee was the Johnson County Bank, Johnson County Kansas. Mark Twain Bank agreed to finance the transaction. Kroh Brothers Development Company, a Missouri corporation and a general partner of El Monte Associates, acted as guarantor for the loan.

During the loan negotiations, Mark Twain Bank asked El Monte Associates to provide an opinion letter and title coverage. Attorney John R. Weisenfels of the Jackson Law Firm prepared the requested opinion letter dated April 2, 1986. The opinion letter represented that El Monte Associates was a duly organized Kansas general partnership that had authority to borrow the purchase money and to execute the promissory note and security agreements. The opinion letter further stated that the El Monte security documents constituted valid, binding, and enforceable obligations and that those documents had been duly executed and delivered. The last sentence of the last paragraph of the opinion letter disclaimed liability:

> **This opinion is valid as of the date hereof, but we take no responsibilities to any information or opinions contained herein.**

The sum of $753,280 was loaned to El Monte Associates by Mark Twain Bank to purchase the real property, and the money was placed in escrow. El Monte Associates bought title insurance from the Chicago Title Insurance Company. Chicago Title conducted the closing on April 2, 1986, and also acted as escrow agent. On behalf of the Kroh Foundation, Jack Kroh signed the deed conveying the trust's property to El Monte Associates. The remainder of the loan pro-

ceeds, after paying-off existing liens, recording fees and title insurance fees totaled $595,370.87. The escrow agent paid the remainder to the Kroh Brothers Redevelopment Corporation and not to the Kroh Foundation. El Monte Associates executed and delivered to Mark Twain Bank a promissory note and a mortgage for $753,280 purportedly incumbering the property as security for the loan.

Litigation commenced after El Monte Associates failed to repay Mark Twain Bank.[1] Mark Twain petitioned to quiet title to the property in the District Court of Johnson County, Kansas. The Kansas Supreme Court eventually determined that Mark Twain Bank had no mortgage interest in the El Monte Associates property because Jack Kroh lacked authority to execute the deed as trustee for the Kroh Foundation and because the Johnson County Bank lacked authority to ratify Jack Kroh's act. *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 863 P.2d 355 (1992). As a result of the Kansas Supreme Court's decision, Chicago Title paid Mark Twain Bank $753,280.

While the Kansas quiet title action was pending, Mark Twain Bank brought the negligent misrepresentation action that is the subject of this appeal. In its petition captioned "Petition For Damages For Professional Malpractice," Mark Twain Bank alleged that the Jackson Law Firm had incorrectly represented in the opinion letter that the El Monte promissory note and mortgage were valid, binding, and enforceable obligations. The petition further alleged that the Jackson Law Firm was negligent in issuing the opinion letter without determining whether El Monte owned or had the right to mortgage the property bought from the Kroh Foundation. The petition finally asserted that Mark Twain Bank had relied on

the opinion letter in making the loan, and had suffered economic loss as a result.

■ Summary judgment was entered in favor of the Jackson Law Firm, and the third party claim against Chicago Title was dismissed without prejudice. In granting summary judgment, the trial court determined that the disclaimer in the opinion letter precluded Mark Twain Bank from proving the reliance element of its negligent misrepresentation action.[2]

## I. Non–Client's Negligent Misrepresentation Action Against Attorney

On appeal Mark Twain Bank asserts that the summary judgment was erroneous because genuine factual issues remain concerning its reliance on the opinion letter. Nevertheless, this case presents the threshold issue of whether a non-client can maintain an action for negligent misrepresentation against an attorney.

No Missouri appellate decision deals with a negligent misrepresentation action brought by a non-client against an attorney. Historically, privity created the legal duty underlying attorney negligence suits. In absence of privity, an attorney could be liable to non-clients for professional acts only in exceptional cases involving intentional torts, such as fraud or collusion. *Rose v. Summers, Compton, Wells & Hamburg, P.C.*, 887 S.W.2d 683, 686 (Mo.App.1994); *Kennedy v. Kennedy*, 819 S.W.2d 406, 410 (Mo.App.1991). Traditionally, in an action for professional negligence against an attorney, the existence of an attorney-client relationship is a necessary element. *Rose*, 887 S.W.2d at 686. Recently, the Missouri Supreme Court broke with the long-standing tradition and now allows

---

1. In February 1987, El Monte Associates and Kroh Brothers Redevelopment Corporation filed petitions for voluntary bankruptcy under Chapter 11 of the Bankruptcy Code.

2. The elements of a cause of action for negligent misrepresentation are (1) the defendant supplied information in the course of its business or because of some other pecuniary interest; (2) due to the defendant's failure to exercise reasonable care or competence in obtaining or communicat-

ing this information, the information was false; (3) the defendant intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) **the plaintiff *justifiably relied* on the information;** and (5) as a result of the plaintiff's reliance on the statement, the plaintiff suffered a pecuniary loss. *Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 689 (Mo.App.1994); 3 RESTATEMENT (SECOND) OF TORTS § 552 (1977).

non-clients to sue attorneys for negligence in narrowly defined circumstances.

■ In *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 628–29 (Mo. banc 1995), the Court fashioned a six-part balancing test for determining whether an attorney owes a duty to a non-client.[3] *Id.* at 629. The *Donahue* test determines the question of whether the attorney owed a duty to a non-client by weighing the six factors. *Id.* The first factor requires that the client specifically intended the purpose of the attorney's services was to benefit the plaintiff. *Id.* Consequently, a non-client's maintenance of a negligence action against an attorney depends on pleading and proving as a matter of ultimate fact that an attorney-client relationship existed in which the attorney-defendant performed services specifically intended by the client to benefit the non-client plaintiff. *Id.*, at 628–29.

Here, none of the traditional theories recognized by Missouri courts before *Donahue* allow Mark Twain Bank as a non-client to maintain its action against the Jackson Law Firm. Mark Twain Bank's petition for professional malpractice contains no averment of an attorney-client relationship between it and the Jackson Law Firm.[4] Mark Twain Bank's negligent misrepresentation action, which is grounded in negligence, makes no averment of fraud, collusion or malicious acts and does not fall within the exception allowing non-clients to sue attorneys for intentional torts. Thus, Mark Twain Bank asserts a cause of action only if its petition for negligent mis-

representation is within the exception allowing a non-client to sue attorneys.

Under the *Donahue* test, the client's purpose and specific intent to benefit a non-client through the attorney-client relationship is crucial. In *Donahue*, the client directed his attorney to arrange post-death gifts to two beneficiaries. When the transfers failed, the beneficiaries sued the attorney. *Id.* In contrast here, El Monte Associates engaged the Jackson Law Firm to represent it in the purchase of real property. Mark Twain Bank was the lender in the transaction, and not an intended beneficiary of the transaction or of the attorney-client relationship. The loan from Mark Twain Bank was incidental to the transaction and not the intended purpose of the transaction. Therefore, arguably, the crucial first factor of the *Donahue* test—El Monte Associates' purpose and specific intent to benefit Mark Twain Bank through the attorney-client relationship with the Jackson Law Firm is missing. Thus, one may argue that the Jackson Law Firm's client intended to benefit Mark Twain Bank through the attorney-client relationship it enjoyed with the Jackson Law Firm by providing the bank legal representations from its attorneys upon which the bank could rely, a prerequisite to the bank's extending a loan to the client.

Missouri courts have allowed third-parties and non-clients to maintain negligent representation actions against other non-attorney professionals[5], and other jurisdictions have permitted non-clients to sue attorneys for

---

3. The factors are:
 (1) the existence of a specific intent by the client that the purpose of the attorney's services were to benefit the plaintiffs.
 (2) the foreseeability of the harm to the plaintiffs as a result of the attorney's negligence.
 (3) the degree of the certainty that the plaintiffs will suffer injury from attorney misconduct.
 (4) the closeness of the connection between the attorney's conduct and the injury.
 (5) the policy of preventing the harm.
 (6) the burden on the profession of recognizing liability under the circumstances.
*Id.* at 629.

4. In *Donahue*, the Court noted:
 It is true that lawyers frequently make statements or express opinions to persons engaged

in transactions with their clients without intending to assume a duty as attorney to such persons, and reliance alone upon the advice or conduct of a lawyer does not create an attorney-client relationship. *Id.* at 626.

5. Missouri courts have adopted various theories in allowing negligent misrepresentation actions against the following professionals: *Accountants* [*Midamerican Bank & Trust Co. v. Harrison*, 851 S.W.2d 563, 565 (Mo.App.1993); *Aluma Kraft Mfg. Co. v. Elmer Fox & Co.*, 493 S.W.2d 378, 383 (Mo.App.1973)]; *Architects* [*Westerhold v. Carroll*, 419 S.W.2d 73, 80 (Mo.1967); *Chubb Group v. C.F. Murphy & Assoc.*, 656 S.W.2d 766, 784 (Mo.App.1983)]; *Surveyors* [*Baublit v. Barr & Riddle Eng'g Co.*, 768 S.W.2d 233, 236 (Mo. App.1989)].

negligent misrepresentation[6]. Whether the *Donahue* test encompassing attorney liability for negligence to non-clients on a limited basis is applicable to the scenario of this case need not be resolved. Even if *Donahue* were applied here, the trial courts summary judgment would have been appropriate for the following reasons.

## II. Summary Judgment

### A. Justifiable Reliance

If Mark Twain Bank pleaded a cause of action under *Donahue*, it could not have proven the reliance element of its negligent misrepresentation action. To prevail on a negligent misrepresentation claim, the plaintiff must establish its justifiable reliance on the misrepresentation. *See Baublit v. Barr & Riddle Eng'g Co.*, 768 S.W.2d 233, 236–37 (Mo.App.1989).

In its Point I, Mark Twain Bank insists that genuine factual issues remain concerning its reliance on the opinion letter. Nonetheless, the opinion letter on which Mark Twain Bank stakes it's reliance contained the following language in the last sentence: **"we take no responsibilities to any information or opinions contained herein."** In view of that language, Mark Twain Bank could not have justifiably relied on the content of the opinion letter in making the loan to El Monte Associates. Reliance on an opinion letter that disclaimed all liability for its contents is not justifiable under these circumstances. A sophisticated investor, as was Mark Twain Bank, would have questioned the disclaimer before accepting the opinion letter and making the loan.

Additionally, the record discloses that Mark Twain was aware of certain significant irregularities in the transaction that preclude reliance on the letter. The Supreme Court of Kansas found in the quiet title action that Mark Twain Bank possessed a copy of the Trust Agreement applicable to the Kroh Foundation, it knew Jack Kroh was not the trustee of the foundation, it knew the John-

son County Bank was the trustee, but it accepted Jack Kroh's signature on the deed and mortgage anyway. *Mark Twain Kansas City Bank*, 863 P.2d at 363. Mark Twain Bank, a sophisticated investment institution, chose to ignore "all signs of irregularity," and "the hardship [it] experienced was brought on by its own actions." *Id.* Summary judgment is appropriate upon showing facts that negate any one of the plaintiff's elements, or upon showing that the plaintiff will be unable to produce evidence on any one element of its cause of action. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply*, 854 S.W.2d 371, 381 (Mo. banc 1993). Here, no genuine dispute exists on the language of the disclaimer appearing in the opinion letter. When viewed in the light most favorable to Mark Twain Bank, that disclaimer dispels Mark Twain Bank's ability to prove its justifiable reliance on the opinion letter. Without proof of justifiable reliance, Mark Twain Bank's negligent misrepresentation action necessarily fails. Point I is denied.

### B. New Evidence

In Point II, Mark Twain Bank argues that new evidence first raised in its motion to reconsider creates a genuine issue of material fact on its reliance on the opinion letter. In its motion to reconsider, Mark Twain Bank contended that the Jackson Law firm had omitted the word "update" from the disclaimer that should have provided: "This opinion is valid as of the date hereof, but we take no responsibilities to *update* any information or opinions contained herein." In support, Mark Twain Bank submitted as exhibits copies of other opinion letters in which the Jackson Law Firm had used the same disclaimer with the word "update."

The argument is unavailing. The language appearing in the other letters fails to justify Mark Twain Bank's reliance on the opinion letter under consideration. Of the other letters submitted as exhibits, only one was addressed to Mark Twain Bank, and that letter

---

6. Two recent non-Missouri cases exemplify the extension of attorneys' liability for negligent misrepresentation to non-clients: *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.,* 892 P.2d 230 (Colo.1995); *Petrillo v. Bachenberg,* 139 N.J. 472, 655 A.2d 1354 (1995). *See* Ronald E. Mallen and Jeffrey M. Smith, *Legal Malpractice* § 7.8 (3d ed. Supp.1993).

was dated over a month after the opinion letter in issue here. The inclusion of the word "update" in the other letters has no bearing on Mark Twain Bank's proof of its justifiable reliance in this case. Point II is denied.

### C. Equitable Estoppel

In Point III, Mark Twain Bank claims that the doctrine of equitable estoppel should prevent the Jackson Law Firm from benefiting from the disclaimer in the opinion letter.

 This claim fails for inadequate pleading and proof. The party asserting equitable estoppel must affirmatively plead the doctrine and establish each element by clear evidence. *Phipps v. Shelter Mutual Ins. Co.,* 715 S.W.2d 930, 933 (Mo.App.1986). Equitable estoppel requires proof that the estopped party made a representation on which another party relied in good faith to its detriment. *Bass v. Rounds,* 811 S.W.2d 775, 779 (Mo. App.1991). Mark Twain Bank first raised the equitable estoppel doctrine in its motion to reconsider. Its compliance with the pleading requirements is therefore questionable. Further, evidence of Mark Twain's good faith reliance is lacking. A sophisticated lender who was represented by independent counsel, Mark Twain Bank accepted the opinion letter containing the disclaimer. The circumstances requiring the application of equitable estoppel are absent here. Point III is denied.

### Conclusion

Consideration of Mark Twain Bank's claims affirms the propriety of summary judgment. The judgment is affirmed.

All concur.