Claude KENNEDY and Gertie Kennedy, Plaintiffs–Appellants,

v.

Mark KENNEDY, Doug Kennedy, and the Partnership of Kennedy & Kennedy, Defendants–Respondents.

No. 17387.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 20, 1991.

James V. O'Brien and Theodore H. Lucas, St. Louis, for plaintiffs-appellants.

Manuel Drumm, Sikeston, for defendants-respondents.

MONTGOMERY, Judge.

Claude Kennedy and Gertie Kennedy (plaintiffs) filed a two-count petition alleging (1) tortious interference with a business relationship and (2) slander of title against Mark Kennedy, Doug Kennedy and their law firm partnership of Kennedy & Kennedy (defendants). Defendants' motion to dismiss for failure to state a cause of action was sustained on December 31, 1990, and the case was dismissed with prejudice. Plaintiffs' motion for reconsideration was

denied by the succeeding trial judge on January 22, 1991.[1] This appeal follows.

Plaintiffs contend that each count of their petition does state a cause of action. Defendants counter with the position that all alleged acts of defendant Mark Kennedy were privileged under facts alleged in both counts of plaintiffs' petition.

We glean from both briefs the facts are essentially not in dispute. On September 9, 1983, L.L. Barkley and Marguerite Barkley (Barkleys) executed a note in favor of the Carter County State Bank secured by a deed of trust on 440 acres of land in Oregon County, Missouri. Thereafter, the Barkleys defaulted on their loan and Carter County State Bank commenced foreclosure proceedings in March of 1984. Barkleys commenced an unsuccessful action for a permanent injunction to prevent foreclosure of the Oregon County property. Carter County State Bank purchased the property at a foreclosure sale on April 12, 1985. On August 24, 1987, Carter County State Bank sold the property to plaintiffs.

After the purchase plaintiffs entered into negotiations with the United States Forest Service to exchange the Oregon County property for 440 acres of United States Forest Service property in Shannon County, Missouri. A statement of intent was entered into between plaintiffs and the United States Forest Service on November 19, 1987. This written statement set forth broad terms for the trade and allowed the parties to later sign an exchange agreement. It provided either party the right to withdraw from the exchange prior to conveyance by the United States of America.

After newspaper publication of the statement of intent, Barkleys retained defendant Mark Kennedy to represent them. By certified letter dated June 29, 1988, he represented to the United States Forest Service that the Oregon County property had previously been illegally and improperly foreclosed and sold to Carter County State Bank without proper notice, without a properly appointed trustee, and in violation of Missouri law and statutes; that as a result Barkleys claim title to the property.

Thereafter, defendant Mark Kennedy caused Butler County Abstract & Title, Inc., to issue an amended title insurance policy which showed the Barkleys' purported claim to the Oregon County property as an exception. Prior to being contacted by defendant Mark Kennedy, Butler County Abstract & Title, Inc., was fully aware of the Barkleys' 1984 unsuccessful lawsuit to prevent foreclosure. Butler County Abstract & Title, Inc., issued the original title insurance policy to plaintiffs without an exception for the Barkleys' purported claim to the Oregon County property. The amended policy was issued only after contact by defendant Mark Kennedy.

In determining whether plaintiffs have stated a cause of action in Counts I and II this court assumes every pleaded fact is true and takes every favorable inference in favor of plaintiffs which may reasonably be drawn from the facts pleaded. If the facts pleaded and the reasonable inferences to be drawn show any ground that would entitle plaintiffs to relief, the petition should not have been dismissed. *Connell v. Whiteley*, 779 S.W.2d 781, 782–83 (Mo.App.1989). Furthermore, "[a] pleader is required to state only the ultimate facts, and it is not necessary to plead the facts or circumstances by which the ultimate facts will be established." *Scheibel v. Hillis*, 531 S.W.2d 285, 290 (Mo. banc 1976).

With these principles in mind, we turn to Count I of plaintiffs' petition to determine if it states a claim for tortious interference with a business relationship and business expectancy. The essential elements for a claim of tortious interference with a business relationship or business expectancy are:[2] (1) A valid business relationship or expectancy; (2) defendant's

---

**1.** Honorable W. Robert Cope heard the motion for reconsideration.

**2.** The tort of interference with a business expectancy is applicable to both fully formed contracts and mere expectancies. *Honigmann v. Hunter Group, Inc.*, 733 S.W.2d 799, 806 (Mo. App.1987).

knowledge of the relationship or expectancy; (3) intentional interference in inducing or causing breach of the relationship or expectancy; (4) absence of justification; and (5) resulting damages. *A.L. Huber & Son, Inc. v. Jim Robertson Plumbing, Inc.*, 760 S.W.2d 496, 499 (Mo.App.1988). We will discuss these elements in numerical order as applied to Count I.

■ (1) VALID BUSINESS RELATIONSHIP OR EXPECTANCY. Paragraphs 8 and 9 of plaintiffs' petition allege the land exchange negotiations which resulted in a written statement of intent of November 19, 1987, to trade properties.

(2) DEFENDANT'S KNOWLEDGE OF THE RELATIONSHIP OR EXPECTANCY. Paragraph 14 of plaintiffs' petition alleges that defendant Mark Kennedy had knowledge of plaintiffs' business relationship and expectancy with the Forest Service by virtue of his June 29, 1988, certified letter sent to the United States Forest Service.

(3) INTENTIONAL INTERFERENCE IN INDUCING OR CAUSING BREACH OF THE BUSINESS RELATIONSHIP OR EXPECTANCY. Paragraph 15 of plaintiffs' petition alleges that defendant Mark Kennedy intentionally caused a termination of plaintiffs' business relationship with the United States Forest Service by virtue of his letter to them and by his actions with regard to the amendment of the title insurance policy by Butler County Abstract & Title, Inc. Plaintiffs allege but for such actions the business relationship would not have been terminated.

(4) ABSENCE OF JUSTIFICATION. Paragraphs 13 and 16 of plaintiffs' petition allege that defendant Mark Kennedy acted without justification because (a) he knew or should have known that Barkleys had unsuccessfully brought suit in 1984 to prevent foreclosure; (b) knew or should have known that the 1984 suit was based on the same allegations as those made in his June 29, 1988, certified letter to the United States Forest Service; (c) knew or should have known that by judgment dated May 15, 1984, the Oregon County Circuit Court denied Barkleys' attempt to prevent foreclosure, thereby establishing the foreclosure was valid; and (d) as a result of all of the above, he knew or should have known that the allegations contained in his letter, as well as his representations to Butler County Abstract & Title, Inc., were false.

(5) RESULTING DAMAGE TO PLAINTIFF. Paragraph 17 of plaintiffs' petition alleges that as a result of defendant Mark Kennedy's actions, the land exchange agreement was terminated, and plaintiffs were damaged in excess of $15,000.

We conclude Count I of plaintiffs' petition sets forth ultimate facts which establish each element necessary to state a claim for tortious interference with a business relationship or expectancy. Defendants cite no cases to the contrary.

■ According to plaintiffs, Count II of their petition states a claim for slander of title. Four things are necessary to maintain an action for slander of title: (1) Plaintiff must have title, in the sense of some interest or estate in the property; (2) the words must be false; (3) they must be maliciously published; (4) they must result in pecuniary loss or injury to plaintiff. *Connaway v. Walters*, 786 S.W.2d 913, 917–18 (Mo.App.1990). We address each element in numerical order as applied to Count II.

■ (1) TITLE. Paragraph 5 of plaintiffs' petition, incorporated by reference in Count II, alleges plaintiffs own the property in question.

(2) FALSE WORDS. Paragraphs 20 and 21 of plaintiffs' petition allege that defendant Mark Kennedy falsely represented in his letter of June 29, 1988, to the United States Forest Service that plaintiffs did not have good title to the Oregon County property and made similar false representations to Ron Little of Butler County Abstract & Title, Inc.

(3) MALICIOUS PUBLICATION. Paragraphs 21 and 23 of plaintiffs' petition allege that defendant Mark Kennedy made false representations to the United States Forest Service and Butler County Abstract

& Title, Inc., which were maliciously published because defendant Mark Kennedy knew or should have known that said representations were false but made them to prevent the exchange of property.

(4) LOSS TO PLAINTIFF. Paragraphs 22 and 24 of plaintiffs' petition allege that defendant Mark Kennedy's actions denied plaintiffs the opportunity to exchange property, and plaintiffs were damaged in an amount exceeding $15,000.

We conclude Count II of plaintiffs' petition states a cause of action for slander of title. Defendants' brief cites no case to the contrary.

Finally, the last question to decide is whether defendant Mark Kennedy's actions, as alleged in both counts, were privileged. If privileged, neither count would state a cause of action say defendants.

■ We first observe that an attorney can be liable to third parties for his professional acts in exceptional cases. Liability occurs if an attorney is guilty of fraud, collusion, or of a malicious or tortious act. In *White v. McCoy Land Co.*, 101 S.W.2d 763 (Mo.App.1936), *aff'd White v. Scarritt*, 111 S.W.2d 18 (Mo.1937), the court stated:

'An attorney is personally liable to a third party who sustains an injury in consequence of his wrongful act or improper exercise of authority where the attorney has been guilty of fraud or collusion, or of a malicious or tortious act.'

*Id.* at 766.

■ In *White*, the defendant Scarritt was the president and attorney for McCoy Land Co. The court found that Scarritt was liable for an intentional tort (duress) committed by him in his capacity as attorney for McCoy Land Co. Thus, in this state an attorney may be liable for intentional torts committed in furtherance of his representation of a client. See *Lackey v. Vickery*, 57 F.Supp. 791 (W.D.Mo.1944).

As to the question of privilege, defendants cite the case of *Roberson v. Beeman*, 790 S.W.2d 948 (Mo.App.1990). A summary judgment was upheld on the basis of a conditional or qualified privilege afforded defendant, an attorney. The court discussed both absolute and qualified privilege.

In defining an absolute privilege, the court stated:

A privileged communication or statement, in the law of libel and slander, is one which, except for the occasion or circumstances under which it is made, would be defamatory and actionable.... Such a privilege generally protects judges, counsel, parties, and witnesses from responsibility for libel or slander for words, otherwise defamatory, published in the course of judicial proceedings, provided that the statements are pertinent or relevant to the case.

*Id.* at 950.

The court defined a conditional or qualified privilege as:

"... all statements made bona fide in performance of a duty, or with a fair and reasonable purpose of protecting the interest of the person making them, or the interest of the person to whom they are made. A communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contain criminatory matter, which, without this privilege, would be slanderous and actionable. But in this definition of a privileged communication, the word 'duty' cannot be confined to legal duties, which may be enforced by indictment, action, or mandamus, but must include moral and social duties of imperfect obligation.

\*   \*   \*   \*   \*   \*

" '... Briefly stated, a qualifiedly privileged communication is a defamatory communication made on what is called an occasion of privilege without actual malice. As to such communications there is no civil liability.' "

*Id.* at 951.

*Roberson* holds that an attorney's extrajudicial communications made to potential defendants in the preparation or investigation of an anticipated civil proceeding are

qualifiedly privileged when there is no evidence of malice or bad faith. In the instant case defendant Mark Kennedy's communications were not made to potential defendants which differs from *Roberson*.

We hold plaintiffs' allegations do not reveal an absolute privilege for defendant Mark Kennedy because his statements were not published in the course of any judicial proceeding. We hold plaintiffs' allegations reveal no conditional or qualified privilege because plaintiffs plead malice on the part of defendant Mark Kennedy, and his statements were made to persons not having a corresponding interest or duty to that of plaintiffs.

The judgment is reversed and the cause remanded for further proceedings.

SHRUM, P.J., and MAUS, J., concur.