Harriet Nangle ROSE, Individually, Stephen J. Nangle, as Guardian of the Minor Child, Ellen Nangle, and Cecelia Nangle, as Guardian of the Child, Timothy Nangle, Plaintiffs/Appellants,

v.

SUMMERS, COMPTON, WELLS & HAMBURG, P.C., Defendant/Respondent.

No. 64553.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 4, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 9, 1994.

Application to Transfer Denied
Dec. 20, 1994.

Michael J. McAvoy, Fenton, for appellants.

Robert S. Rosenthal, Steven H. Schwartz, T. Michael Ward, St. Louis, for respondent.

GRIMM, Presiding Judge.

Plaintiffs are former limited partners in a Missouri limited partnership. They allege they were defrauded by the two general partners. However, this action is against defendant law firm. Plaintiffs allege the firm committed malpractice and constructive fraud by, among other things, failing to ensure "that the general partners did nothing to injure the partnership or the partners."

The trial court sustained defendant's motion to dismiss. It held that plaintiffs' allegations did not establish that law firm owed a duty to plaintiffs as limited partners in a limited partnership.

Plaintiffs raise three points. They allege the trial court erred in: (1) "finding that the defendant law firm owed no duty to plaintiff limited partners"; (2) not allowing them to sue as unrelated third parties who defendant damaged; and (3) dismissing their count for constructive fraud. We affirm.

## I. Background

■ Rule 84.04(c) requires the statement of facts in an appellant's brief to be "fair and concise" and "without argument." Plaintiffs' brief violates this rule. It contains arguments, and refers to matters that were not before the trial court.[1] It is not fair and concise. *Ex gratia*, we review.

---

1. Plaintiffs submitted a legal file which includes    documents that were neither attached nor re-

The facts alleged in the amended petition and exhibits incorporated therein reveal the following. In the spring of 1982, plaintiffs each had an ownership interest in the limited partnership. One of its major assets was a 37½% interest in a joint venture. This joint venture owned and operated a nursing home.

In April, 1982, the joint venture proposed a sale of the nursing home to a new limited partnership, River Heights Investors. River Heights Investors hired defendant "to structure and develop said transaction."

In August, 1982, the joint venture sold the nursing home to River Heights Investors for $1,200,000. This sale was financed through Industrial Development Authority (IDA) Bonds. For its 37½% share in the joint venture, the limited partnership received $450,000.00.

Plaintiffs were not told of this sale. Defendant acted as bond counsel for the transaction. Plaintiffs also allege that defendant acted as counsel for others, including the limited partnership.

That fall, the general partners in the limited partnership told plaintiffs they were going to borrow heavily against the partnership properties in order to construct houses. Further, they told plaintiffs that the nursing home had not been sold.

The general partners suggested to plaintiffs that plaintiffs sell their interest in the limited partnership to them. Plaintiffs agreed. In order to purchase their interests, the general partners applied to Mark Twain Bank for a $175,000.00 loan.

Apparently as collateral for the loan, the two general partners pledged the IDA bonds. Bank required a letter from defendant. That letter, dated November 1, 1982, states in part:

> We have been informed by Joseph S. Graves and Leroy J. Lauer, General Partners of [limited partnership] that it desires to pledge its thirty-seven and one-half percent (37.5%) interest in the Bond as collateral for a loan to be obtained from you. In that regard, we have been requested to issue our opinion with respect to the permissibility of the proposed pledge under the terms and provisions of the proceedings, agreements and other documents relating to the issuance and sale of the Bonds and the rights, duties and obligations of the bond holders thereunder. Based solely on those facts related to us by the General Partners of the [limited partnership] and our review of the proceedings, agreements and other documents relating to the issuance and sale of the Bonds, we are of the opinion that nothing contained in such proceedings, agreements and other documents prohibit or limit a collateral pledge as proposed.

Bank made the loan. General partners immediately "proceeded to loan themselves individually all of the loan proceeds and thereby attain the ability to make a down payment of the obligation as called for in the sales contract previously negotiated between the [p]laintiffs and the general partners as individuals." They defrauded plaintiffs by purchasing their interest "at a fraction of it's (sic) real value in light of the sale of the [nursing home property]."

Plaintiffs brought this action against defendant in two counts. Plaintiffs contend on appeal that Count I of their petition alleges "breach of fiduciary duty." Notwithstanding their characterization, the alleged conduct is legal malpractice. In paragraph 30 of that count, plaintiffs plead that defendant was "negligent and careless." They then set out, in eleven subparagraphs, the alleged acts of negligence.

Paragraph 32 of count I alleges that "as a direct and proximate result of [defendant's] carelessness and negligence," the loan was made and the general partners "pirated" the assets. Paragraph 33 states, "[b]ut for the carelessness and negligence" of defendant,

---

ferred to in the amended petition. Neither party presented these documents to the trial court when it considered defendant's motion. Therefore, we do not consider these documents and disregard all references to them. *See Terre Du*

*Lac Ass'n v. Terre Du Lac, Inc.,* 737 S.W.2d 206, 210–211 (Mo.App.E.D.1987); *Lay v. St. Louis Helicopter Airways, Inc.,* 869 S.W.2d 173, 174 (Mo.App.E.D.1993).

general partners would not have purchased plaintiffs' interests.

The second count alleges fraud.

## II. Duty

For their first point, plaintiffs allege the trial court erred in dismissing the malpractice count. Specifically, plaintiffs contend that the court erred in "finding that the defendant law firm owed no duty to plaintiff limited partners." They argue that an attorney-client relationship existed between plaintiffs and defendant, giving rise to a corresponding duty.

A legal malpractice case contains four elements. *Boatright v. Shaw*, 804 S.W.2d 795, 796 (Mo.App.E.D.1990). One required element is the existence of an attorney-client relationship between the plaintiff and attorney. *Id.*

Here, plaintiffs do not contend that they personally hired defendant to represent them as individuals. Rather, they allege that an attorney-client relationship existed between defendant and the limited partnership. Because plaintiffs had an interest in the limited partnership, they argue that defendant's representation of that partnership created an attorney-client relationship with each partner in the limited partnership.

This is an issue of first impression for Missouri courts. We hold that an attorney representing a limited partnership owes a duty of loyalty to the limited partnership as an organization and not to the limited partners as individuals.

Missouri's Rules of Professional Conduct support this holding. Rule 4–1.13 provides that a "lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." The Comment to this rule notes that an organizational client, such as a corporation, is a legal entity. It also reflects that this rule applies to unincorporated associations as well as corporations. Rule 4–1.13 Comment.

It would be inconsistent with this rule to hold that an attorney has a duty to the officers, directors, employees, and shareholders or their equivalent. Rule 4–1.13 Comment. Limited partners in a limited partnership are comparable to shareholders in a corporation. Thus, it would also be inconsistent to hold that an attorney has a duty to limited partners of the limited partnership.

Further, to impose on the attorney a duty of loyalty to each limited partner would place an impossible burden on the attorney. Conflicting interests would be inevitable.

Also, the number of limited partners an attorney could owe a conflicting duty to is unlimited. We recognize that only three limited partners are involved here. However, if we accepted plaintiffs' proposition, an attorney's duty would exist regardless of the number of limited partners. Limited partnerships often contain numerous partners. *See e.g., Anthony v. Padmar, Inc.,* 415 S.E.2d 828, 830 (S.C.App.1992) (approximately 480 limited partners); *Fortson v. Winstead, McGuire, Sechrest & Minick,* 961 F.2d 469, 471 (4th Cir.1992) (117 limited partners).

Our holding that an attorney does not owe a duty to limited partners as individuals is in accord with the majority of other jurisdictions who have considered this issue. *See e.g., Hopper v. Frank,* 16 F.3d 92, 95 (5th Cir.1994); *Wanetick v. Mel's of Modesto, Inc.,* 811 F.Supp. 1402, 1409 (N.D.Cal.1992); *Morin v. Trupin,* 778 F.Supp. 711, 736 (S.D.N.Y.1991); *Amsler v. American Home Assur. Co.,* 348 So.2d 68, 71 (Fla.App.1977), *overruled on other grounds, Goldome Sav. Bank v. Wulsin,* 530 So.2d 291 (Fla.1988). *But see Arpadi v. First MSP Corp.,* 628 N.E.2d 1335, 1339 (Ohio 1994). Point denied.

## III. Third Party Action

Plaintiffs next allege the trial court erred in dismissing the malpractice count because they are "third parties damaged by [d]efendant's breach of fiduciary duty." They argue that even if there is no attorney-client relationship, defendant's conduct is serious enough to allow them to sue as third parties.

Attorneys can be liable to third parties for their professional acts in exceptional cases. *Kennedy v. Kennedy,* 819 S.W.2d 406, 410 (Mo.App.S.D.1991). Liability attaches if an attorney is guilty of fraud, collusion, or a malicious or tortious act. *Id.*

As previously stated, this count alleges legal malpractice. Legal malpractice does not qualify as the exceptional case necessary to justify liability to a third party.

Also, if we were to allow a cause of action under this theory, we would impose the duty rejected in section II. Point denied.

## IV. Constructive Fraud

For their final point, plaintiffs allege the trial court erred in dismissing Count II for constructive fraud. They contend their petition is sufficient to withstand a motion to dismiss.

In some circumstances, silence or nondisclosure of a material fact can be an act of fraud. *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. banc 1993). However, before silence can amount to fraud, there must be a duty to speak. *Id.* This duty can arise where there is a relation of trust and confidence between the parties. It can also arise where one party has superior knowledge or information not within the fair and reasonable reach of the other party. *Id.*

As previously discussed, defendant law firm did not owe a duty to plaintiffs. No relation of trust and confidence existed for plaintiffs to rely on. Nor did defendant have superior knowledge or information not within the fair and reasonable reach of plaintiffs. Accordingly, plaintiffs' claim of constructive fraud did not state a cause of action. Point denied.

The trial court's judgment is affirmed.

CARL R. GAERTNER and AHRENS, JJ., concur.