

# Missouri Court of Appeals
## Southern District

| | | |
|---|---|---|
| BRANSON'S NANTUCKET, LLC, | ) | SD38350 |
| | ) | |
| Appellant, | ) | |
| v. | ) | OPINION FILED: |
| | ) | January 27, 2025 |
| TIMESHARE LAW OFFICE, LLC; | ) | |
| NEALLY LAW, LLC; JOSHUA DAVID | ) | |
| NEALLY; AND JENNIFER HARDY, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**Appeal from the Circuit Court of Barry County, Missouri
The Honorable David Allen Cole, Judge**

**Before Special Division: Edward R. Ardini, Jr., Presiding Judge,
Thomas N. Chapman, Judge, and Janet Sutton, Judge**

Branson's Nantucket, LLC, appeals the judgment of the Barry County Circuit Court dismissing with prejudice its action against individual attorneys, Joshua Neally and Jennifer Hardy, and law firms, Timeshare Law Office, LLC, and Neally Law, LLC (collectively "Defendants"), for tortious interference with a business expectancy and civil conspiracy. In its two points on appeal, Branson's Nantucket contends that the trial court erred in dismissing their claims because it adequately pleaded facts supporting each element of each claim entitling it to relief. The judgment is affirmed.

**Factual and Procedural Background**

On December 30, 2022, Branson's Nantucket filed its original petition in Stone County against Defendants asserting claims of tortious interference with a business expectancy and civil conspiracy. It alleged that Defendants interfered with its contracts with vacation owners by instructing them to cease making payments to them. On February 3, 2023, Defendants filed a motion to dismiss, and alternative motion for more definite statement and motion to strike. They argued that Branson's Nantucket's petition failed to identify which particular contracts or owners were at issue or which owners ceased making payments to it and failed to allege facts demonstrating the absence of justification element of tortious interference. Defendants also filed a motion for change of venue. Venue of the case was transferred to Barry County.

On June 29, 2023, the trial court heard arguments on Defendants' motion, sustained their motion to make the petition more definite and certain, and granted Branson's Nantucket 30 days to file its amended petition.

On July 28, 2023, Branson's Nantucket filed its first amended petition against Defendants asserting the same tortious interference with a business expectancy and civil conspiracy claims. It pleaded the following facts, which are accepted as true and construed favorably to it. *Konopasek v. Konopasek*, 683 S.W.3d 250, 256 (Mo. banc 2023).

Branson's Nantucket owns and operates a luxury resort near Branson overlooking Table Rock Lake. It offers the opportunity for individuals or families to purchase

ownership in its resort, and owners also have the option to trade their Vacation Points to explore other affiliated resorts around the world. Branson's Nantucket enters into a contractual relationship with each of its owners to facilitate the purchase of the vacation ownership. The contract also requires the payment of maintenance fees.

Defendants are individual attorneys and law firms in Missouri. Branson's Nantucket received letters of representation from Defendants for at least 56 individual contracts. During representation of these clients, Defendants instructed their clients to cease making payments to Branson's Nantucket without regard to the clients' contractual obligations. Of the 56 individual contracts, 21 owners ceased making payments on either their mortgage or fees after being represented by Defendants and are thus delinquent on their obligations.

In Count I, Branson's Nantucket asserted tortious interference with a business expectancy. Specifically, it alleged the following paragraphs:

71. Plaintiff incorporates paragraphs 1 through 70 as if fully stated herein.

72. Plaintiff possesses valid contract rights and a business expectancy by way of its contracts with individual vacation owners.

73. Defendants have knowledge of Plaintiff's contracts with individual owners.

74. Defendants have intentionally interfered with Plaintiff's contracts with individual vacation owners and with Plaintiff's business expectancy that the contracts be performed by advising Plaintiff's owners to cease making payments to Plaintiff in breach of their contracts with Plaintiff.

75. Defendants have acted without justification in an attempt to cause individual owners to breach their contractual obligations with Plaintiff.

3

76. As a result of Defendants' actions, Plaintiff has been damaged.

In Count II, Branson's Nantucket asserted civil conspiracy, alleging the following:

77. Plaintiff incorporates paragraphs 1 through 76 as if fully stated herein.

78. Defendants have conspired to solicit Plaintiff's individual vacation owners in an attempt to convince them to breach their contractual obligations to Plaintiff.

79. Defendants' actions are unlawful in that they are meant to tortiously interfere with Plaintiff's business expectancy and contracts.

80. Defendants had a meeting of the minds to carry out the above-described conduct.

81. Defendants, in an act in furtherance of the conspiracy, are representing Plaintiff's owners and advising Plaintiff's owners to cease making payments to Plaintiff in breach of their contracts with Plaintiff.

82. As a result of Defendants' actions, Plaintiff has been harmed and continues to be harmed.

Other relevant allegations from Branson's Nantucket's amended petition are detailed in point one below.

On August 7, 2023, Defendants filed a motion to dismiss the first amended petition and alternative motion to strike. They argued that, while the amended petition cured some deficiencies from the original petition in that it identified the particular owners and contracts at issue, the remainder of the amended petition was "essentially identical to the previous version" and pleaded only broad conclusions or irrelevant allegations rather than specific facts demonstrating the absence of justification element of tortious interference.

In its suggestions in opposition to Defendants' motion to dismiss filed on September 25, 2023, Branson's Nantucket argued that it adequately pleaded its tortious interference claim and specifically the fourth element of the claim, absence of justification, by expressly alleging in paragraph 75 that "Defendants have acted without justification."

On November 15, 2023, the trial court entered its judgment dismissing the case with prejudice.

This appeal by Branson's Nantucket followed.[1]

## Standard of Review

An appellate court reviews the trial court's grant of a motion to dismiss *de novo*. *Konopasek*, 683 S.W.3d at 255. "When considering whether a petition states a claim

---

[1] On April 11, 2024, Branson's Nantucket filed a motion to strike Defendants' supplemental legal file, which contains its original petition and Defendants' motion to dismiss the original petition, as well as portions of Defendants' brief referencing those documents. The motion was taken with the case. Rule 81.12(a), which governs the contents of the record on appeal, mandates, "The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." Branson's Nantucket relies on Rule 81.12(b)(1)(D), which provides, "If any pleading is amended, the legal file shall include the last amended pleading and shall not set forth any abandoned pleadings or abandoned part of the record not introduced in evidence." The procedural posture of this case involves the dismissal of Branson's Nantucket's first amended petition. No evidence was introduced in the case. Defendants' motion to dismiss the first amended petition referenced the original petition, argued that the amended petition was almost identical to the original petition and that it did not cure the deficiency regarding the pleading of the absence of justification element, and requested the trial court to dismiss the amended petition with prejudice. The original petition and the motion to dismiss it were relevant to the trial court's consideration of Defendants' motion to dismiss the first amended petition and are necessary to the determination of the questions on appeal. Branson's Nantucket's motion to strike Defendants' supplemental legal file and portions of Defendants' brief is denied.

5

upon which relief can be granted, the [appellate court] reviews the plaintiff's petition to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause of action that might be adopted in the case." *Id.* at 255-56 (internal quotes and citation omitted). The appellate court "must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Id.* at 256 (internal quotes and citation omitted). Even if the trial court does not specify the grounds for its ruling, the "dismissal will be affirmed if justified on any ground advanced in the motion to dismiss." *Id.* (internal quotes and citation omitted).

### Point One – Tortious Interference with a Business Expectancy

In its first point on appeal, Branson's Nantucket contends that the trial court erred in dismissing its claim for tortious interference with a business expectancy because it adequately pleaded facts supporting each element of the claim thereby entitling it to relief.[2] In the argument section of its brief, it asserts that its allegation that "Defendants

---

[2] Branson's Nantucket's first point on appeal is deficient under Rule 84.04. "Rule 84.04 plainly sets forth the required contents of briefs filed in all appellate courts." *City of St. Louis v. State*, 682 S.W.3d 387, 397 n.7 (Mo. banc 2024) (internal quotes and citation omitted). Point one does not follow the structure for points relied on set out in Rule 84.04(d)(1) because it fails to "[e]xplain in summary fashion why, *in the context of the case*, those legal reasons support the claim of reversible error." Rule 84.04(d)(1)(C) (emphasis added). "Compliance with Rule 84.04 is mandatory, and lack of compliance with requirements of Rule 84.04 amounts to failure to preserve issues for appellate review." *D.D.W. v. M.F.A.*, 594 S.W.3d 274, 279 n. 5 (Mo. App. S.D. 2020) (internal quotes and citation omitted). An appellate court has discretion to review deficient points *ex gratia* where the argument is readily understandable. *City of St. Louis*, 682 S.W.3d at 397 n.7; *In re S.M.W.*, 658 S.W.3d 202, 212-13 (Mo. App. W.D. 2022). Here, Branson's Nantucket's argument is readily understandable, therefore, this court cautiously exercises its discretion to decide the point on the merits "because each time we review a

have acted without justification in an attempt to cause individual owners to breach their contractual obligations with Plaintiff" adequately pleaded the ultimate fact of absence of justification and that it was not required to assert facts demonstrating the applicability of the exceptional circumstances exception to the general rule that attorneys are not liable for third-party claims arising out the representation of their clients. Alternatively, it asserts that if it was required to plead exceptional circumstances, it alleged conduct from which it could be inferred that Defendants were not acting in good faith for the interests of their clients or were motivated by self-interest.

"Missouri is a fact-pleading state." *Konopasek*, 683 S.W.3d at 259 (internal quotes and citation omitted). "Under the fact-pleading standard, a petition must contain 'a short and plain statement of the facts showing that the pleader is entitled to relief.'" *Id.* (quoting Rule 55.05). "However, the facts that must be pleaded are the ultimate facts, not evidentiary facts." *Id.* (internal quotes and citation omitted). "Ultimate facts are those the jury must find to return a verdict for the plaintiff." *Id.* (internal quotes and citation omitted). "[I]t is axiomatic that legal conclusions cannot be pleaded as ultimate facts." *McConnell v. W. Bend Mut. Ins. Co.*, 606 S.W.3d 181, 190 (Mo. App. W.D. 2020) (quoting *Musser v. Musser*, 221 S.W. 41, 50 (Mo. 1920)). "Mere conclusions of the pleader not supported by factual allegations are disregarded in determining whether a

---

noncompliant brief *ex gratia*, we send an implicit message that substandard briefing is acceptable. It is not." *City of St. Louis*, 682 S.W.3d at 397 n.7 (internal quotes and citation omitted).

petition states a claim on which relief can be granted." *Schlafly v. Cori*, 647 S.W.3d 570, 573 (Mo. banc 2022) (internal quotes and citation omitted). *See also McConnell*, 606 S.W.3d at 190; *Jennings v. Bd. of Curators of Mo. State Univ.*, 386 S.W.3d 796, 798 (Mo. App. S.D. 2012).

"Generally, an attorney is not liable to a third party who is not his or her client because the attorney is not in an attorney-client relationship with the third party." *Sheffield v. Matlock*, 587 S.W.3d 723, 729 (Mo. App. S.D. 2019) (internal quotes and citations omitted). *See also Suppes v Curators of Univ. of Mo.*, 613 S.W.3d 836, 854 (Mo. App. W.D. 2020). "This general rule arises out of 'the attorney's fiduciary duty to the client, and the public policy that attorneys be able to discharge that duty by freely using those procedures that are necessary to competently represent their clients unfettered by fear of personal liability.'" *Sheffield*, 587 S.W.3d at 729 (quoting *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co., Inc.*, 931 S.W.2d 166, 177 (Mo. App. W.D. 1996)).

An exception to the general rule is the "exceptional circumstances" rule. *Id.*; *Macke*, 931 S.W.2d at 177. "This rule provides that an attorney may be liable to a third person for acts arising out of the attorney's representation of a client, if the attorney is guilty of 'fraud, collusion, or a malicious or tortious act.'" *Macke*, 931 S.W.2d at 177 (quoting *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 627 (Mo. banc 1995)). *See also Suppes*, 613 S.W.3d at 854; *Sheffield*, 587 S.W.3d at 729. Such conduct "is beyond the conditional or qualified privilege of an attorney." *Macke*, 931 S.W.2d at 177. The exceptional circumstances rule necessarily focuses only on the attorney's

conduct because a client's misconduct cannot be imputed to the attorney. *Sheffield*, 587 S.W.3d at 729, *Macke*, 931 S.W.2d at 176, 179. The rule does not encompass all tortious conduct, but only intentional torts. *Suppes*, 613 S.W.3d at 854; *Sheffield*, 587 S.W.3d at 729; *Macke*, 931 S.W.2d at 178.

The first count of Branson's Nantucket's amended petition alleged tortious interference with a business expectancy, an intentional tort.[3] *Macke*, 931 S.W.2d at 180. The elements of tortious interference with a business expectancy are:

> (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages.

*Nazeri v. Mo. Valley College*, 860 S.W.2d 303, 316 (Mo. banc 1993). *See also Macke*, 931 S.W.2d at 180. This case concerns the fourth element—the absence of justification.

"Absence of justification is the absence of any legal right to take the actions which form the basis of the claim." *Macke*, 931 S.W.2d at 181. "No liability arises from interfering with a contract or business expectancy[] if the defendant had an unqualified legal right to do the action of which the petition complains." *Id.* (citing *Nazeri*, 860 S.W.2d at 317). "The action is justified if it is privileged and not unlawful." *Id.*

---

[3] Specifically, Branson's Nantucket alleges that "Defendants have intentionally interfered with Plaintiff's contracts with individual vacation owners and with Plaintiff's business expectancy that the contracts will be performed by advising Plaintiff's owners to cease making payments to Plaintiffs in breach of their contracts with Plaintiff." "Interference with contractual or business relations is a tort recognized under Missouri law." *Greenwood v. Sherfield*, 895 S.W.2d 169, 173 n. 6 (Mo. App. S.D. 1995) (internal quotes and citations omitted). "Maliciously procuring a breach of contract constitutes an intentional tort." *Id.*

Missouri recognizes a privilege to protect attorneys when acting for clients. *Id.* at 181-82. The rationale for such privilege "has long been recognized by the Missouri Supreme Court, which acknowledged that '[i]f attorneys cannot act and advise freely and without constant fear of being harassed by suits and actions at law, parties could not obtain their legal rights.'" *Id.* at 181 (quoting *Peck v. Chouteau*, 3 S.W. 577, 581 (Mo. 1887)). When acting in the scope of their attorney-client relationship, attorneys are privileged "to advise and to act for a client even though that advice, if wrong, may cause the client to tortiously interfere with another's business relationship or expectancy, so long as the attorney does not employ wrongful means and acts with good faith to protect the interests of the client and not for the attorney's self interest." *Id.* at 182. Wrongful means are threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or common law. *Nazeri*, 860 S.W.2d at 317; *Macke*, 931 S.W.2d at 182.

Branson's Nantucket first asserts that its allegation that "Defendants have acted without justification in an attempt to cause individual owners to breach their contractual obligations with Plaintiff" adequately pleaded the ultimate fact of absence of justification and that it was not required to assert facts demonstrating the applicability of the exceptional circumstances exception. It argues that because an attorney's privilege or lack thereof under the exception is relevant only insofar as it proves or disproves the absence of justification element, it would be a matter of evidentiary proof, but not a

matter of pleading, whether it can demonstrate Defendants engaged in conduct falling within the exception.

In making such argument, Branson's Nantucket relies on the recent Missouri Supreme Court case, *Konopasek v. Konopasek*, 683 S.W.3d 250 (Mo. banc 2023). Its reliance on *Konopasek*, however, is misplaced. *Konopasek* involved the pleading of an action under the Uniform Fraudulent Transfers Act, section 428.005 to 428.059, RSMo 2016. 683 S.W.3d at 253. The Act requires a plaintiff to show "the debtor made the transfer…[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor," which the plaintiff in *Konopasek* did allege. *Id.* at 256-57 (quoting section 428.024.1(1)). The defendant argued that to state a claim, the plaintiff was required to plead the existence of several "badges of fraud," which are listed in the Act. *Id.* at 258. In rejecting the argument, the Supreme Court found that the badges of fraud are recognized evidentiary facts that a plaintiff may use to establish the ultimate fact—the debtor's actual intent to hinder, delay, or defraud creditors—and, thus, the plaintiff was not required to plead them. *Id.* at 259. It further reasoned that under Rule 55.15, while the circumstances constituting fraud shall be stated with particularity in fraud cases, intent may be generally averred. *Id.* at 260. Thus, the plaintiff's allegation that the transfer was made "with the actual intent to hinder, delay and/or defraud" was sufficient. *Id.*

*Konopasek* does not support Branson's Nantucket's proposition that it adequately stated a claim for tortious interference—and specifically, the fourth element of the tort, absence of justification—by simply pleading the ultimate fact that Defendants acted in

**11**

the absence of justification. Unlike in this case, *Konopasek* did not involve a third-party claim against attorneys or, more specifically, a claim of tortious interference by attorneys. It also focused on pleading the intent element of the cause of action, which is governed by Rule 55.15 and not applicable here. While *Konopasek* states the general requirement that a plaintiff plead ultimate facts rather than evidentiary facts in support of its claim, it does not indicate that it is sufficient in all cases to generally recite the elements of a claim, as Branson's Nantucket suggests. In fact, such proposition was explicitly rejected in the context of a tortious interference claim. *Zafer Chiropractic & Sports Injs., P.A. v. Hermann*, 501 S.W.3d 545, 553 (Mo. App. E.D. 2016) (plaintiffs failed to specifically allege facts necessary to support a claim of tortious interference with a business expectancy where they made "conclusory statements that parrot[ed] the elements of a tortious interference claim, but they fail[ed] to plead facts to support those conclusions").[4]

Instead, for a claim of tortious interference, and specifically the absence of justification element, the Missouri Supreme Court in *Nazeri* found that where the defendant had a legitimate interest in the contract or expectancy sought to be protected, the plaintiff was required to plead facts tending to show that the defendant committed some independently wrongful act in the process of protecting his legitimate interest. 860

---

[4] While *Zafer* applied Kansas law to the plaintiffs' substantive claims, it applied the Missouri Rules of Civil Procedure, specifically Rule 55.05, in considering whether the plaintiffs adequately pleaded their claim for tortious interference. *Id.* at 549-550.

S.W.2d at 317. Absent any factual allegation of impropriety by the defendant, the plaintiff's complaint did not state a legally cognizable claim for tortious interference, and dismissal of the claim was not error.[5] *Id.*

Such principle has been specifically applied to third-party actions against attorneys arising out of the representation of their clients. In *Sheffield v. Matlock*, 587 S.W.3d 723 (Mo. App. S.D. 2019), the plaintiff homeowner sued a law firm and individual attorneys for their role in assisting their client, a foreclosure consultant, who the plaintiff alleged had violated the Foreclosure Consulting Act in financial transactions undertaken to halt the foreclosure of his home. *Id.* at 727. This court found that the plaintiff's allegations in his petition that the attorneys provided legal services in the course of representing their client—planning and drafting legal documents, appearing in court proceedings, and receiving legal contentions from opposing parties—fell well short of supporting any claim that the attorneys engaged in any fraud, collusion, or malicious or tortious acts such

---

[5] The same principle is applied in sovereign immunity cases. "Under the rule of sovereign immunity, municipalities are generally not liable for torts." *KITC Homes, LLC v. City of Richmond Heights*, 642 S.W.3d 318, 323 (Mo. App. E.D. 2022) (internal quotes and citation omitted). "Sovereign immunity is not an affirmative defense; instead, when suing a municipality, the burden is on the plaintiff to plead sufficient, specific facts that give rise to an exception to the rule of sovereign immunity." *Id.* The principal is also applied in official immunity cases. "Official immunity protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Forester v. May*, 671 S.W.3d 383, 386-87 (Mo. banc 2023) (internal quotes and citations omitted). "[W]hen the factual allegations of a petition establish a public employee's challenged actions were within the scope of her official duties and there is no allegation of malice, the defendant may invoke the affirmative defense of official immunity in a motion to dismiss for failure to state a claim." *Id.* at 387. "To survive such a motion, a plaintiff must plead factual allegations affirmatively establishing an exception to official immunity." *Id.*

that their conduct fell within the exceptional circumstances rule. *Id.* at 729. Because the plaintiff failed to sufficiently allege any conduct of the defendant attorneys constituting exceptional circumstances, the trial court did not err in dismissing his claim. *Id.* at 730.

In *Kennedy v. Kennedy*, 819 S.W.2d 406 (Mo. App. S.D. 1991), the plaintiff landowners sued the attorney for the former owners for tortious interference of a business relationship or expectancy for causing the title company to amend the title insurance policy to show former owners' claim to the property resulting in the termination of the plaintiffs' business relationship with the United States Forest Service. *Id.* at 409. This court found that the plaintiffs' allegations that the attorney's representations that the plaintiffs did not have good title to the property, which he knew or should have known were false, sufficiently supported a claim that the attorney acted maliciously providing an exception to the attorney's privilege against suit for representation of a client. *Id.* at 409-11. The trial court's dismissal of the plaintiffs' petition was, therefore, reversed. *Id.* at 411.

Accordingly, where the complaint itself establishes the existence of attorney privilege, the plaintiff must plead facts to demonstrate the applicability of the exceptional circumstances rule—that the defendant engaged in fraud, collusion, or malicious or tortious acts. *Sheffield*, 587 S.W.3d at 729; *Kennedy*, 819 S.W.2d at 410-11. Specific to actions for tortious interference, the plaintiff must plead facts demonstrating that the defendant attorney, when acting within the scope of the attorney-client relationship, employed wrongful means, was not acting in good faith for the interest of the client, or

**14**

was motivated by self-interest. *Sheffield*, 587 S.W.3d at 729; *Macke*, 931 S.W.2d at 182; *Kennedy*, 819 S.W.2d at 410-11.

In this case, Branson's Nantucket alleged that Defendants tortiously interfered with their contracts with individual vacation owners by advising the owners to cease making payments to it in breach of those contracts. Specifically, it alleged that Defendants, who are individual attorneys and law firms, represent 56 owners; that Defendants advised the owners (their clients) to cease making payments to it under the contracts; and that of the 56 owners, 21 owners have ceased making payments to it. Based on these allegations, Branson's Nantucket's amended petition established that Defendants' actions of giving such advice in the scope of their attorney-client relationships were privileged. Thus, it was required to plead facts showing that Defendant's actions fell within the exceptional circumstances rule and were not justified or privileged. Specifically, it was required to allege that Defendants utilized wrongful means (such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade or any other wrongful act recognized by statute or common law), were not acting in good faith for the interests of their clients, or were motivated by self-interest. Contrary to Branson's Nantucket's assertion, its allegation in paragraph 75 alone that "Defendants have acted without justification in an attempt to cause individual owners to breach their contractual obligations with Plaintiff" did not adequately plead facts demonstrating absence of justification.

Branson's Nantucket alternatively asserts in point one that it adequately pleaded conduct from which it can be inferred that Defendants were not acting in good faith for the interests of their clients or were motivated by self-interest. Defendants argue that Branson's Nantucket did not make this argument to the trial court and is barred from making it on appeal.

Rule 78.09 provides that a party must, "at the time the ruling or order of the court is made or sought, make[] known to the court the action that the party desires the court to take or objections to the action of the court and grounds therefor." Such requirement permits "the trial court an opportunity to fairly identify and rule on the issue." *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 267 (Mo. banc 2014) (internal quotes and citation omitted). *See also Geier v. Sierra Bay Dev., LLC*, 528 S.W.3d 51, 55 (Mo. App. S.D. 2017) ("Adherence to [Rule 78.09] assists in resolving any alleged error at the earliest possible opportunity by allowing the trial court to rule intelligently. It is a critical component in the efficient and timely resolution of disputes and the conservation of the parties' and the courts' limited resources." (internal quotes and citation omitted).). "It is well recognized that a party should not be entitled on appeal to claim error on the part of the trial court when the party did not call attention to the error at trial and did not give the court the opportunity to rule on the question." *Mayes*, 430 S.W.3d at 267 (internal quotes and citation omitted). To give the trial court an opportunity to rule on an issue, "a party must make a timely objection or request, which is one made when the occasion for the ruling desired first appears." *Id.* (internal quotes and citation omitted).

**16**

Here, the occasion for Branson's Nantucket's desired ruling regarding the sufficiency of its petition first appeared when the trial court was ruling on Defendants' motion to dismiss. "Opposing the defendants' motion to dismiss, in and of itself, is insufficient to raise a claim of error with the trial court's ruling on the motion; the party also must present the specific basis for such opposition." *Id.* at 268.

In its suggestions in opposition to Defendants' motion to dismiss, Branson's Nantucket argued that paragraphs 72 through 76 adequately pleaded its claim for tortious interference with a business expectancy based the Missouri Supreme Court's *Konopasek* decision. It specifically argued that paragraph 75 itself adequately pleaded the absence of justification element and that "[a]t this stage, on a motion to dismiss, what Branson's Nantucket may later prove or proffer evidence of is immaterial." Branson's Nantucket's alternative argument here (that it adequately pleaded facts demonstrating the applicability of the exceptional circumstances rule) appears to be a different basis for opposing Defendants' motion to dismiss than that raised in the trial court. But even if its argument is not a different theory than (or is encompassed in) that raised below, it fails.

Branson's Nantucket contends, without any analysis, that the following paragraphs of its first amended petition cumulatively supported the reasonable inference that Defendants were acting not to protect their clients' interests but to further their own:

> 48. In cases where owners are instructed by Defendants to cease making payments, the customers—or Defendants' clients—are placed at risk to negative credit reporting, adverse tax consequences, risk of foreclosure, and risk of being sued for non-payment.

**17**

50.  Upon information and belief, Defendants use false statements and promises to their clients and engage in numerous deceptive and unfair trade practices throughout the process under the guise of a legitimate legal process.

51.  Upon information and belief, any "legal advice" given by Defendants is given without an assessment of whether the customers' circumstances warrant either non-payment of contractual obligations or cancellation of the relevant contracts.

54.  Upon information and belief, Defendants disregard any analysis of the law and simply threaten resorts like Plaintiffs without any legitimate legal reason to do so.

55.  Upon information and belief, Defendants fail to disclose this fact to vacation owners and oftentimes do not discuss the specific legal theories of their clients' situation with the client.

56.  Defendants, individually and collectively, are targeting Plaintiff under the guise of practicing law.

61.  Upon information and belief, Defendants are simply enlisting owners to further their own business interests without respect to their clients' individual needs.

62.  In addition to sending letters of representation, Defendants are instituting lawsuits seeking proprietary documents from Plaintiff including, for example, Plaintiff's by-laws and owner's list.

63.  Upon information and belief, the individual vacations owners that are named plaintiffs in such lawsuits are unaware that this information is being sought and are unsure why the information is relevant to their cause of action (because it is not relevant to such lawsuits).

64.  Additionally, Defendants' clients are unaware of the payment arrangement for the "legal services" being provided by Defendants.

65.  Defendants have filed suit against Plaintiff on behalf of clients without any discussion of the amount the client will pay, the hourly rate the client will pay, or the nature of the engagement.

66.  Further, Defendants' clients are unaware of whether Defendants' representation of them is hourly, contingent, or pro bono.

67.  Defendants are currently representing clients in on-going litigation matters against Plaintiff and have not executed a fee agreement with said clients.

68.  Upon information and belief, a large portion of Defendants' business model is to entice Plaintiffs' vacation owners into hiring them and then using those individuals to access Plaintiff's confidential information without any legal basis to do so.

None of these paragraphs, however, adequately pleaded that, relevant to their representation of the subject Branson's Nantucket timeshare owners, Defendants acted with wrongful means, in bad faith, or in their self-interest.

Only four of the paragraphs (48, 50, 51, and 61) appeared to possibly relate to Branson's Nantucket's claim the Defendants tortiously interfered with its contracts or business expectancies by advising owners to cease making payments under their contracts.  Paragraph 48 alleged that Defendants' clients, who cease making payments based on Defendants' advice, are placed at financial risk in various ways.  However, it failed to allege bad faith or wrongful means by Defendants.  Branson's Nantucket did not allege that Defendants failed to advise their clients of the potential risks of non-payment or that any of their clients actually suffered any of the potential harms.  Even if it had alleged that Defendants failed to advise their clients of the risks, it did not allege that such failure was intentional or malicious to harm the clients or part of a scheme to benefit Defendants rather than negligence, which is not actionable by Branson's Nantucket.  *Rose v. Summers, Compton, Wells & Hamburg, P.C.*, 887 S.W.2d 683, 687 (Mo. App.

**19**

E.D. 1994) ("Legal malpractice does not qualify as the exceptional case necessary to justify [attorney] liability to a third party."). *See also Macke*, 931 S.W.2d at 178. Thus, paragraph 48 failed to allege improper means, bad faith, or self-interest.

Paragraph 50 appeared to be Branson's Nantucket's only attempt to assert some form of wrongful means employed by Defendants. In conclusory fashion, it alleged that Defendants use "false statements and promises to their clients" and "engage in numerous deceptive and unfair trade practices throughout the process under the guise of a legitimate legal process." Similarly, paragraph 51 alleged that legal advice given by Defendants is "given without an assessment of whether the customers' circumstances warrant either non-payment of contractual obligations or cancellation of the relevant contracts." Such conclusions, however, were offered without supporting facts. What were the false statements and promises? What were the numerous deceptive and unfair trade practices that Defendants engage in? What was meant by "the guise of a legitimate legal process"? What were the customers' circumstances and what were the criteria that Defendants should have considered? The bare conclusions unsupported by factual allegations cannot be considered in determining whether Branson's Nantucket's amended petition stated a claim on which relief can be granted. *Schlafly*, 647 S.W.3d at 573; *McConnell*, 606 S.W.3d at 190; *Jennings*, 386 S.W.3d at 798.

Finally, paragraph 61 appeared to be Branson's Nantucket's only attempt to allege that Defendants were acting in their own self-interest. However, the allegation merely stated, "Defendants are simply enlisting owners to further their own business interests

**20**

without respect to their clients' individual needs." Again, the allegation was a conclusion offered without supporting facts. How does enlisting owners further Defendants' business interests? To the extent that the allegation referred to Defendants earning and receiving attorney fees from the owners/clients, "[t]he fact that the attorney has been or will be paid legal fees for representation of the attorney's client does not meet [the exceptional circumstances] standard." *Macke*, 931 S.W.2d at 178 n.4. Paragraph 61 did not sufficiently plead conduct constituting exceptional circumstance or, specifically, wrongful means, bad faith, or self-interest.

The remaining allegations cited by Branson's Nantucket (paragraphs 54, 55, 56, 62-68) were not related to the claim that Defendants tortiously interfered with its business or contracts by advising their clients to cease making payments. Paragraphs 54 and 55 appeared to complain about the quality of legal advice given unnamed owners about the possible cancellation of their contracts. Paragraph 54 also included an allegation that Defendants "simply threaten" resorts like Branson's Nantucket without any legitimate legal reasons to do so. Similarly, paragraph 56 asserted that Defendants are "targeting" Branson's Nantucket "under the guise of practicing law." To the extent that such allegations were meant to demonstrate improper means, bad faith, or self-interest in advising clients to cease making contractual payments, they were merely conclusions without supporting facts. How did Defendants threaten resorts? How did they target Branson's Nantucket? Additionally, paragraphs 62 through 68 concerned unrelated lawsuits instituted against Branson's Nantucket by Defendants on behalf of unnamed

**21**

owners, and specifically discovery and the fee arrangements in the suits. Such allegations lacked any nexus to Branson's Nantucket's claim of tortious interference for advising clients to cease payments.[6] Contrary to Branson's Nantucket's contention, none of the allegations cited by it supported the reasonable inference that Defendants were acting not to protect their clients' interests but to further their own. The allegations failed to allege improper means, bad faith, or self-interest; were merely conclusions without factual support; or were irrelevant to its tortious interference claim.

Liberally construing all allegations favorably to Branson's Nantucket, they supported only that Defendants provided legal advice to their clients in the course of their representation and did not support a claim that Defendants engaged in any fraud, collusion, or malicious or tortious acts such that their conduct would fall within the exceptional circumstances rule. Specifically, Branson's Nantucket did not allege facts related to their claims demonstrating that Defendants employed wrongful means, did not act in good faith for the interest of their clients, or were motivated by self-interest and, therefore, were not acting in the scope of their privileged attorney-client relationship. The trial court did not err in dismissing Count I with prejudice.

---

[6] Branson's Nantucket's first amended petition also contained some allegations pertaining to Defendants' past and possibly present relationships with time share exit companies and lawsuits with another resort owner and a time share exit company. Branson's Nantucket does not, however, argue on appeal that these allegations supported the reasonable inference that Defendants were acting not to protect their clients' interests but to further their own. The allegations made no connection between the possible relationships and other lawsuits and Branson's Nantucket's claim of tortious interference against Defendants.

Point one is denied.

## Point Two – Civil Conspiracy

In its second point on appeal, Branson's Nantucket contends that the trial court erred in dismissing its claim for civil conspiracy because it adequately pleaded facts supporting each element of the claim thereby entitling it to relief.[7]

"A civil conspiracy is an agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act." *Gibson v. Brewer*, 952 S.W.2d 239, 245 (Mo. banc 1997). The elements of conspiracy are (1) two or more persons, (2) with an unlawful objective, (3) after a meeting of the minds, (4) committed at least one act in furtherance of the conspiracy, and (5) plaintiff was thereby damaged. *Id.*; *M.W. v. S.W.*, 539 S.W.3d 910, 915 (Mo. App. E.D. 2017); *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 864 (Mo. App. E.D. 2000), *abrogated on other grounds by Ellison v. Fry*, 437 S.W.3d 762 (Mo. banc 2014). "There can be no cause of action for conspiracy in the absence of an underlying wrongful act or tort." *M.W.*, 539 S.W.3d at 915; *Misischia*, 30 S.W.3d at 864. If the underlying tort claim fails to state a cause of action, then a claim of conspiracy based on that tort claim will not stand. *Misischia*, 30 S.W.3d at 864.

---

[7] As with its first point, Branson's Nantucket's second point is deficient under Rule 84.04 because it fails to "[e]xplain in summary fashion why, *in the context of the case*, those legal reasons support the claim of reversible error." Rule 84.04(d)(1)(C) (emphasis added). But because its argument is readily understandable, this court cautiously exercises its discretion to decide the point on the merits. *City of St. Louis*, 682 S.W.3d at 397 n.7.

In this case, as discussed in point one, Branson's Nantucket failed to plead facts sufficient to demonstrate the underlying tort of tortious interference with a business expectancy, therefore, its claim of civil conspiracy necessarily failed. *See Id.* (where underlying tort claims were either dismissed or there was a defendant's verdict at trial as to one or all defendants, the trial court did not err in dismissing the plaintiff's claims for conspiracy). The trial court properly dismissed Count II alleging civil conspiracy against Defendants.

Point two is denied.

### Conclusion

The judgment is affirmed.

_____
Thomas N. Chapman, Judge

All concur.